## DUNN v. TOWN OF FORAKER.

No. 3847. Opinion Filed November 10, 1914.

(144 Pac. 353.)

1. **MUNICIPAL CORPORATIONS—Officers—Action on Official Bond—Burden of Proof.** The burden of proving the covenants contained in an official bond, as alleged in the petition, is upon the plaintiff, and its failure to produce the bond or otherwise prove such covenants is fatal to a recovery.

2. **SAME—Town Treasurer—Official Bond for Unexpired Term.** Where the statute provides the time at which an office shall be filled by election or appointment and a bond is given for the unexpired term of such office, such bond is not a continuing bond securing the town against a defalcation of a treasurer during a succeeding term.

(Syllabus by Rittenhouse, C.)

*Error from County Court, Osage County;*

*C. T. Bennett, Judge.*

Action by the Town of Foraker, Osage County, Oklahoma, a municipal corporation, against J. T. Dunn. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*R. B. Boone* and *Leahy & McDonald,* for plaintiff in error.

*Grinstead & Scott,* for defendant in error.

Opinion by RITTENHOUSE, C. In about the month of March, 1909, W. Scott Samuels was appointed and qualified as treasurer of the town of Foraker, Osage county, Okla., to fill the unexpired term of Mr. Ricketts, who resigned as such treasurer, and he executed a bond as such treasurer. At the trial evidence was offered to show that the bond had been lost, and that it was made in the sum of $1,000; that it was signed by W. Scott Samuels, as principal, and J. T. Dunn, as surety. The plaintiff proved that in October, 1910, W. Scott Samuels was short $525 in his account. No evidence was offered as to when the shortage occurred, and there was no evidence to show

whether W. Scott Samuels was elected at the spring election of 1909, as provided by section 1002, Comp. Laws 1909, or was holding over until his successor had qualified. A demurrer was filed to the sufficiency of the evidence and overruled by the court, and the ruling on such demurrer is assigned as error.

The record presents two questions for our determination: (1) Was the burden of proof upon the plaintiff to show the covenants contained in the bond before a recovery could be had? and (2) whether there was any proof to show that the shortage occurred during the unexpired term of Mr. Ricketts for which W. Scott Samuels was appointed as such treasurer and for which such bond was given.

The evidence of witness Conyers, who prepared the bond, is as follows:

"Q. What was the penalty of the bond, if you remember, the one you prepared? A. I have no actual memory of that bond; I have in mind $1,000 but I don't know whether I got it from the bond. Q. To the best of your ability, will you name the conditions in the bond? A. I don't believe I can begin to name them; I drew up a bond conditioned to faithfully perform the duties of the office; that is, just what I suppose I did; I don't remember the actual drawing of the bond. Q. Give to the best of your knowledge what it contained. A. The bond's terms made some one liable to the town of Foraker; the bond wasn't executed before me. It was just an ordinary bond of that kind. Q. Was that bond drawn for the treasurer to execute. A. I believe so; yes, sir. * * * Q. You remember who the principal was on that bond? A. Yes, sir; I remember the treasurer. Q. Who? A. W. Scott Samuels. Q. Who was before W. Scott Samuels qualified? A. Mr. Ricketts. Q. Did he resign before his term of office expired? A. It occurs to me that he did. Q. Now the surety on the bond was whom? A. I can't say to my own knowledge, it was understood generally that Mr. Dunn was to be one."

Witness W. L. Leaton, who was city clerk, testified as follows:

"Q. Tell the jury in your own way, the provisions of that bond, as near as you can. A. I can't swear as to what should

be in the bond. * * * Q. You say you don't remember the terms of the bond? A. No, sir. Q. You don't remember the penal sum it was written for? A. I think $1,000. Q. You can't state positively that was the amount? A. No, sir. Q. Can you state how long the bond was to run for? A. I can't. Q. You don't recall that there was a stipulation in that bond that it would hold good for the unexpired term of Mr. Ricketts only? A. It seems to me there was a stipulation of that kind recorded in the minutes, but, being in the bond, I can't remember that. * * * Q. What period of time did that bond govern? A. I don't remember. * * * Q. When did this shortage accrue? A. Never knew when it commenced; I never did audit the books careful enough to know the dates of the shortage. There was some commenced a short time after he was appointed. Q. How long after? A. About a month or two. * * * Q. He had been continually paying warrants drawn on the treasury? A. Yes, sir. Q. It would be hard to state when this shortage occurred, wouldn't it? A. Yes, sir."

Mr. Shiedler testified as follows:

"Q. Did you ever read the bond? A. I expect I did—I don't remember. * * * Q. Do you remember the amount of the penalty? A. Well, I think it was $1,000, if I haven't forgotten. Q. Tell the court the best recollection you have of the other conditions of the bond. A. I couldn't tell you what was in the bond; I probably read it, but I couldn't tell as to the conditions of it. I suppose it was gotten up right. I wouldn't say what was in it. * * * Q. You say you can't recollect reading that bond at all? A. No, sir; I think I read it, but I don't remember it. * * * Q. You are not familiar or recollect the conditions and appearance of that bond? A. No."

This is all the evidence relating to the amount, duration, covenants, and parties to such bond.

Section 854, Comp. Laws 1909 (section 694, Rev. Laws 1910), provides that the treasurer shall, within ten days after his election or appointment, give bond payable to the town, with freehold sureties, in such amount as the board of trustees shall direct, and such bond shall be for double the amount of the estimated tax duplicates for the current year. Reading this section of our statute into the bond and construing it in connection with

the evidence offered, we are still unable to find anything which gives us any information as to the covenants contained in the bond. It is alleged in the petition that at the time the defendant was appointed treasurer of said town, he was required to make, execute, and deliver to plaintiff his certain bond, conditioned for the faithful performance of all the duties incumbent upon him by reason of his appointment, and to well and truly pay and cause to be paid unto said plaintiff or upon its order all sums of money coming into his hands as such treasurer. There is not a scintilla of evidence in support of this allegation, nor does the statute specify that these particular covenants alleged shall be contained in the bond. All the witnesses testified that they did not know what covenants were contained in the bond, and in an action against a surety on an official bond we are not at liberty to assume what covenants were contained in the bond. The burden of proving the covenants as set forth in the petition is upon the plaintiff, and a failure to do so is fatal to a recovery. Murfree, Official Bonds, section 590 *et seq.*, section 125 *et seq ;* 2 Enc. of Evidence, 562.

The next question is whether there was any proof to show that the shortage occurred during the unexpired term of **Mr.** Ricketts, for which W. Scott Samuels was appointed as such treasurer and for which such bond was given. The unexpired term of office of Mr. Ricketts as treasurer expired, by operation of section 1002, Comp. Laws 1909, on the first Monday in May, 1909, unless at that time his successor failed to duly qualify, in which event he would hold over under section 10, article 23, of the Constitution until his successor had duly qualified. However, there is no contention on behalf of the plaintiff that W. Scott Samuels was holding over under section 10, *supra,* and therefore the question as to whether a surety would be liable for a default while the principal was holding over under said section 10, *supra,* is not presented for our consideration.

Witness for plaintiff testified that the minute book of said town shows that the bond was given for the unexpired term for

which Mr. Ricketts would have served if he had not resigned. In addition to this, witness Conyers testified that the bond was given for the unexpired term of Mr. Ricketts, and it was his recollection that the bond contained that limitation. There was no effort made on behalf of the plaintiff to show when this shortage occurred, whether during the unexpired term of Mr. Ricketts, or during the term from the first Monday in May, 1909, to October 16, 1910, when W. Scott Samuels resigned. If the shortage occurred during the last term, the surety on the bond for the first term could not be held liable for such shortage. There was not only an absence of proof as to when the shortage occurred, but the witness W. L. Leaton, who was clerk of the town of Foraker, testified that he did not know when the shortage commenced, as he did not audit the books carefully enough to know the dates of the shortage. Where the statute provides the time at which an office shall be filled by election or appointment and a bond is given for the unexpired term of such office, such bond is not a continuing bond securing the town against a defalcation of a treasurer during a succeeding term. 5 Cyc. 773; *O'Brien v. Murphy,* 175 Mass. 253, 56 N. E. 283, 78 Am. St. Rep. 487; *Treasurer of State v. Mann,* 34 Vt. 371, 80 Am. Dec. 688; *People v. Aikenhead et al.,* 5 Cal. 106, 10 Am. St. Rep. 856; *King County v. Ferry,* 5 Wash. 536, 32 Pac. 538, 19 L. R. A. 500, 34 Am. St. Rep. 881; Murfree, Official Bonds, sections 596, 421.

The trial court erred in refusing to sustain the demurrer to the evidence, and the cause should, therefore, be reversed and remanded, with instructions that the judgment be set aside, and that the demurrer to the evidence be sustained.

By the Court: It is so ordered.